```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8/24/2022
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

NIURKA ARIAS,                                    :
                                                 :
                              Plaintiff,         :
                                                 :
            - against -                          :
                                                 :
                                                 :
KILOLO KIJAKAZI, Acting Commissioner of          :
Social Security,[1]                              :
                                                 :
                              Defendant.         :

------------------------------------------------------------X

21-CV-3118 (RWL)


**DECISION AND ORDER:**
**SOCIAL SECURITY APPEAL**


**ROBERT W. LEHRBURGER, United States Magistrate Judge.**

Plaintiff Niurka Arias, represented by counsel, commenced the instant action against Defendant Commissioner (the "Commissioner") of the Social Security Administration (the "Administration"), pursuant to the Social Security Act (the "Act"), 42 U.S.C. § 405(g), seeking review of the Commissioner's decision that Arias is not entitled to disability insurance benefits ("DIB"). Arias moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules Of Civil Procedure, asking the Court to vacate the administrative decision and remand the case solely for the calculation of disability benefits owed to her. (Dkt. 20.) The Commissioner cross-moved for judgment on the pleadings, asking the Court to affirm the Commissioner's decision. (Dkt. 30.) Arias did not submit a reply. For the reasons explained below, the Court DENIES Arias's motion and GRANTS the Commissioner's motion.

---

[1] Kilolo Kijakazi became Acting Commissioner of Social Security on July 9, 2021 and was automatically substituted as Defendant in this action. *See* Fed. R. Civ. P. 25(d).

## PROCEDURAL HISTORY

On May 24, 2014, Arias filed a Title II application for a period of disability and disability insurance benefits beginning on October 12, 2013.  (R. 21.[2])  Arias claimed disability due to cervical disk disease, cervical radiculopathy, arthritis of the right and left shoulders, right elbow derangements, right wrist arthritis and avascular necrosis, carpal tunnel syndrome, and depression.  (Dkt. 1 ¶ 7.)

On August 27, 2014, the Administration denied Arias's claim.  (R. 21.)  Arias filed a written request for a hearing on October 31, 2014.  (R. 21).  On September 28, 2016, Arias, represented by counsel, appeared and testified at an in-person hearing before Administrative Law Judge ("ALJ") Mark Solomon.  (R. 36).  A vocational expert ("VE"), Edna Clark, also appeared and testified.  (R. 36).  On January 13, 2017, the ALJ issued a decision finding Arias not disabled and capable of making a successful adjustment to work that exists in significant numbers in the national economy.  (R. 31).  On December 18, 2017, the Appeals Council denied Arias's request for review of the ALJ's decision, and the ALJ's decision became the final determination of the Commissioner.  (R. 4-6.)

On February 25, 2018, Arias commenced a civil action challenging the ALJ's final decision.  On August 30, 2018, the Court remanded Arias's action to the Commissioner for further administrative proceedings.  (R. 2515-17.)  On November 19, 2018, the Appeals Council vacated the final decision of the Commissioner and remanded the case to the ALJ to resolve issues regarding the weight assigned to medical opinions, to further consider Arias's maximum residual functional capacity, and to "provide appropriate rationale with specific references to evidence of record in support of the assessed

---

[2] "R." refers to the certified administrative record (Dkt. 16).

limitations."  (R. 2509-13.)   On remand, Arias testified again before ALJ Solomon regarding her impairments.  (R. 2549-65.)  At the request of the ALJ, Dr. Ronald Kendrick, an impartial medical expert, also testified regarding Arias's physical impairments.  (R. 2537-49.)  Melissa Fass-Karlin, an impartial VE, also testified at the request of the ALJ.  (R. 2565-72.)

On January 2, 2020, ALJ Solomon again found Arias "not disabled" and determined that she has the residual functional capacity to perform the jobs of document preparer, cutter/paster, and table worker.  (R. 2502-03.)  Arias appealed to the Appeals Council, but on February 4, 2021, the Appeals Council denied review.  (R. 2471-74.)

Arias filed her Complaint in this action on April 10, 2021, seeking district court review pursuant to 42 U.S.C. § 405(g).  (Dkt. 1.)  On July 31, 2021, the parties consented to proceeding before the undersigned.  (Dkt. 11.)

## APPLICABLE LAW

### A.    Standard Of Review

A United States District Court may affirm, modify, or reverse (with or without remand) a final decision of the Commissioner.   42 U.S.C. § 405(g); *Skrodzki v. Commissioner of Social Security Administration*, 693 F. App'x 29, 29 (2d Cir. 2017) (summary order).  The inquiry is "whether the correct legal standards were applied and whether substantial evidence supports the decision."  *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004); *see also Talavera v. Astrue,* 697 F.3d 145, 151 (2d Cir. 2012) (same).

"'Failure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to adhere to the applicable regulations.'"  *Douglass v. Astrue*, 496 F. App'x 154, 156 (2d Cir. 2012) (quoting *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (remanding for noncompliance with regulations)).  Courts review de novo

whether the correct legal principles were applied and whether the legal conclusions made by the ALJ were based on those principles.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) (reversing where the court could not "ascertain whether [the ALJ] applied the correct legal principles … in assessing [plaintiff's] eligibility for disability benefits"); *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984) (reversing where the Commissioner's decision "was not in conformity with the regulations promulgated under the Social Security Act"); *Thomas v. Astrue*, 674 F.Supp.2d 507, 515, 520 (S.D.N.Y. 2009) (reversing for legal error after de novo consideration).

If the reviewing court is satisfied that the ALJ applied the correct legal standards, then the court must "'conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision.'"  *Brault v. Social Security Administration, Commissioner*, 683 F.3d 443, 447 (2d Cir. 2012) (per curiam) (quoting *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)).  Substantial evidence is defined as "'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971)); *see also Biestek v. Berryhill*, __ U.S. __, __, 139 S. Ct. 1148, 1154 (2019) (reaffirming same standard).   "The substantial evidence standard means once an ALJ finds facts, [the court] can reject those facts only if a reasonable factfinder would ***have to conclude otherwise***."  *Brault*, 683 F.3d at 448 (internal quotation marks omitted) (emphasis in original); *see also* 42 U.S.C. § 405(g) ("findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive").

To be supported by substantial evidence, the ALJ's decision must be based on consideration of "all evidence available in [the claimant]'s case record."  42 U.S.C. § 423(d)(5)(B).  The Act requires the ALJ to set forth "a discussion of the evidence" and the "reasons upon which [the decision] is based."  42 U.S.C. § 405(b)(1).  While the ALJ's decision need not "mention[ ] every item of testimony presented," *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) (per curiam), or "'reconcile explicitly every conflicting shred of medical testimony,'" *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (quoting *Fiorello v. Heckler*, 725 F.2d 174, 176 (2d Cir. 1983), the ALJ may not ignore or mischaracterize evidence of a person's alleged disability.  *See Ericksson v. Commissioner of Social Security*, 557 F.3d 79, 82-84 (2d Cir. 2009) (mischaracterizing evidence); *Kohler*, 546 F.3d at 268-69 (overlooking and mischaracterizing evidence); *Ruiz v. Barnhart*, No. 01-CV-1120, 2002 WL 826812, at *6 (S.D.N.Y. May 1, 2002) (ignoring evidence).

Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).  The court must afford the Commissioner's determination considerable deference and "'may not substitute its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review.'"  *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991) (quoting *Valente v. Secretary of Health and Human Services*, 733 F.2d 1037, 1041 (2d Cir. 1984)); *Dunston v. Colvin,* No. 14-CV-3859, 2015 WL 54169, at *4 (S.D.N.Y. Jan. 5, 2015) (same) (quoting *Jones*, 949 F.2d at 59), *R. & R. adopted*, 2015 WL 1514837 (S.D.N.Y. April 2, 2015).  Accordingly, if a court finds that there is substantial evidence supporting the Commissioner's decision, the court

must uphold the decision, even if there is also substantial evidence for the claimant's position.  *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010).  "The Court, however, will not defer to the Commissioner's determination if it is the product of legal error."  *Dunston*, 2015 WL 54169 at *4 (internal quotation marks omitted) (citing, *inter alia*, *Douglass*, 496 F. App'x at 156; *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999)).

## B.   Legal Principles Applicable To Disability Determinations

Under the Act, a person meeting certain requirements and considered to have a disability is entitled to disability benefits.  42 U.S.C. § 423(a)(1).  The Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  A claimant's impairments must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

To determine whether an individual is disabled and therefore entitled to disability benefits, the Commissioner conducts a five-step inquiry.  20 C.F.R. § 404.1520.  First, the Commissioner must determine whether the claimant is currently engaged in any substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(i), (b).  If so, the claimant is not eligible for benefits and the inquiry ceases.

If the claimant is not engaged in any such activity, the Commissioner proceeds to the second step and must determine whether the claimant has a severe impairment, which is an impairment or combination of impairments that significantly limits the claimant's ability to perform basic work activities.  20 C.F.R. §§ 404.1520(a)(4)(ii), (c).  If

the claimant does not have an impairment or combination of impairments that are severe, the claimant is not entitled to benefits and the inquiry ends.

If the claimant has a severe impairment or combination of impairments, the Commissioner continues to step three and must determine whether the impairment or combinations of impairments is, or medically equals, one of the impairments included in the "Listings" of the regulations contained at 20 C.F.R. Part 404, Subpart P, Appendix 1. If the claimant's impairment or impairments meet or medically equal one of those listings, the Commissioner will presume the claimant to be disabled, and the claimant will be eligible for benefits.  20 C.F.R. §§ 404.1520(a)(4)(iii), (d).

If the claimant does not meet the criteria for being presumed disabled, the Commissioner continues to step four and must assess the claimant's residual functional capacity ("RFC"), which is the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her impairments.  The Commissioner then determines whether the claimant possesses the RFC to perform the claimant's past work. 20 C.F.R. §§ 404.1520(a)(4)(iv), (f), (h).  If so, the claimant is not eligible for benefits and the inquiry stops.

If the claimant is not capable of performing prior work, the Commissioner must continue to step five and determine whether the claimant is capable of performing other available work.  20 C.F.R. §§ 404.1520(a)(4)(v), (g), (h).  If the claimant, as limited by her RFC, can perform other available work, the claimant is not entitled to benefits.  20 C.F.R. §§ 404.1520(a)(4)(iv), (v).  The claimant bears the burden of proof for the first four steps. *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013).  Once the claimant has established that she is unable to perform her past work, however, the Commissioner bears the burden

of showing at the fifth step that "there is other gainful work in the national economy which the claimant could perform." *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998) (internal quotation marks omitted).

## C. The Treating Physician Rule

An ALJ must evaluate every medical opinion received. *Rodriguez v. Colvin*, No. 12-CV-3931, 2014 WL 5038410, at *17 (S.D.N.Y. Sept. 29, 2014). Under the regulations applicable at the time Arias's disability claim was filed, a treating physician's opinion will be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."[3] 20 C.F.R. § 416.927(c)(2); *see also Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008). Conversely, an ALJ is not required to assign a treating physician's opinion controlling weight when it is contradicted by substantial evidence in the record. *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) (noting that a treating physician's opinion is not controlling when contradicted "by other substantial evidence in the record").

When an ALJ gives a treating physician's opinion less than controlling weight, the ALJ must give "good reasons" for doing so. 20 C.F.R. § 416.927(c)(2) (stating that the agency "will always give good reasons in our notice of determination or decision for the weight we give [the claimant's] treating source's medical opinion"); *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999); *Schaal*, 134 F.3d at 505. "Failure to provide 'good reasons'

---

[3] The regulations for evaluating medical opinions were amended in 2017, but the changes are only applicable to claims filed on or after March 27, 2017. *See* 20 C.F.R. §§ 404.1527, 404.1520c; *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01, 5844, 5867-68 (Jan. 18, 2017). Because Arias's claim was filed before that date, the Court applies the earlier regulations.

for not crediting the opinion of a claimant's treating physician is a ground for remand." *Snell*, 177 F.3d at 133; *see also Schaal*, 134 F.3d at 505 ("Commissioner's failure to provide 'good reasons' for apparently affording no weight to the opinion of plaintiff's treating physician constituted legal error").

If the ALJ decides not to give controlling weight to a treating physician's opinion, the ALJ must determine how much weight, if any, to give that opinion. *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019). In doing so, the ALJ must "explicitly consider" the following, non-exclusive "*Burgess* factors": "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Selian*, 708 F.3d at 418 (citing *Burgess*, 537 F.3d at 129 (citing 20 C.F.R. § 404.1527(c)(2))). While failure to explicitly apply the *Burgess* factors is a procedural error, a reviewing court will not reverse the Commissioner's decision when the Commissioner has given "good reasons" for its weight assignment. *Estrella*, 925 F.3d at 96. "Good reasons" are reasons that assure the reviewing court that "the substance of the treating physician rule was not traversed." *Id.*

Adherence to the treating physician rule is "all the more important in cases involving mental health," such as this one. *Flynn v. Commissioner of Social Security Administration*, 729 F. App'x 119, 122 (2d Cir. 2018). That is because mental health impairments are "not susceptible" to certain diagnostic tools that can be used to determine physical impairments during an exam, *id.*, and "[a] mental health patient may have good days and bad days [and] may respond to different stressors that are not always active." *Bodden v. Colvin*, No. 14-CV-08731, 2015 WL 8757129, at *9 (S.D.N.Y. Dec. 14, 2015).

9

A person with cyclical mental health issues, who "'half the time … is well enough [to] work, and half the time … is not[,] … could not hold down a full-time job,'" *Estrella*, 925 F.3d at 97 (quoting *Bauer v. Astrue*, 532 F.3d 606, 609 (7th Cir. 2008)).   Accordingly, a longitudinal understanding of the claimant's impairment is particularly important with respect to mental health conditions and "cannot be readily achieved by a single consultative examination." *Bodden*, 2015 WL 8757129 at *9 (collecting cases); *Estrella*, 925 F.3d at 98 ("a one-time snapshot of a claimant's status may not be indicative of her longitudinal mental health").

"The same factors [as applied to determine the weight given to a treating doctor's opinion] also must be considered with respect to what weight to give non-treating medical sources, 'with the consideration of whether the source examined the claimant or not replacing the consideration of the treatment relationship between the source and the claimant.'" *McGinley v. Berryhill*, No. 17-CV-2182, 2018 WL 4212037, at *12 (S.D.N.Y. July 30, 2018) (quoting *Butts v. Commissioner of Social Security*, No. 16-CV-874, 2018 WL 387893, at *6 (N.D.N.Y. Jan. 11, 2018)), *R. & R. adopted*, 2018 WL 4211307 (S.D.N.Y. Sept. 4, 2018).  Although the Second Circuit has cautioned that ALJs should not rely heavily on the findings of consultative physicians that arose from a single examination, *Cruz v. Sullivan*, 912 F.2d 8, 13 (2d Cir. 1990), a consultative physician's opinion may nonetheless constitute substantial evidence, *see Petrie v. Astrue*, 412 F. App'x 401, 406 (2d Cir. 2011) (affirming ALJ reliance on findings of two consultative examiners in declining to afford treating physicians controlling weight).

## THE FACTUAL AND MEDICAL RECORD

### A.    Personal Background And Claimed Impairments

Arias was born on February 9, 1976.  (R. 42.)  She completed two years of college.  (R. 158.)  She lives with her three children, ages nineteen, six, and four. [4]  (R. 48.)  Her boyfriend, the father of Arias's  youngest child, often stays over to take care of the children.  (R. 48-49.)

Arias worked as a senior attendant guard at the Brooklyn Botanical Garden from at least 2002 to 2013.[5]  (R. 1995-97.)  While serving as a security guard, Arias was injured on multiple occasions.  (R. 43, 1993-97, 2369, 2398-99.)  Her most recent workplace injury occurred in October 2013 and allegedly resulted in Arias's inability to function and/or work.  (R. 71.)

At her first ALJ hearing in 2016, Arias identified depression, C5-6-disc bulge, right shoulder tear, back pain, pinched nerve on neck, and migraines as medical conditions that limit her ability to work.  (R. 157.)  She testified that she cannot sit, stand, or sleep for too long due to pain.  (R. 62.)  She takes Motrin over the counter but is not on any prescription medication.  (R. 53, 159.)  Arias also testified that she has difficulty using public transportation and trouble focusing.  (R. 46-48.)  She sometimes walks her children to school which is one block away but experiences sciatica pain when walking.  (R. 51-52).  Arias was wearing a cast on her hand at the time of the hearing but testified that

---

[4] At her hearing, Arias testified that she has three children, but elsewhere the Record indicates that she has four minor children for whom she cares.  (R. 27, 48.)

[5] There is an immaterial discrepancy in the Record as to Arias's  start date at the Brooklyn Botanical Garden.  (*Compare* R. 158 (year 2000) *with* R. 1995-97 (year 2002).)

prior to getting the cast, she was able to dress, shower, and groom herself.  (R. 51).  She testified that her mother comes over to perform household chores.  (R. 51.)

At the ALJ hearing in 2019, Arias identified migraines, depression, anxiety, chronic pain, and sensitivity in her right hand as impairments.  (R. 2549-65.)  She testified that she had been receiving injections for migraines for about a year.  (R. 2551.)  She also stated that she takes migraine medication and depression medication daily.  (R. 2553-54.)  She stated that she cannot do dishes because she cannot grip. (R. 2554, 2560-61.)  She can stand or walk for under an hour on some days, and can sweep, tie her shoes with difficulty, zipper and button, and take public transportation.  (R. 2554-56.)  She testified again that on bad days her mother comes to help her at home.  (R. 2563.)

### B.   Medical History And Opinions

Arias's first workplace injury of record occurred on October 3, 2006, when she was pushed into a wall, injuring her right shoulder.  (R. 2369.)  A year later, on October 27, 2007, she injured her right arm while closing a loading dock gate.  (R. 2398-99.)  On May 4, 2009, Arias underwent surgery to repair two tears in her right shoulder.  (R. 2044-46.)

In July 2013, Arias went to her primary care physician, Dr. Arthur Weiner, with complaints of left hip pain radiating to her lower back and down her left leg.  (R. 280.)  In March 2014, Arias went back to Dr. Weiner with complaints of neck and back pain, right shoulder, arm, and wrist pain, and depression.  (R. 343, 346.)  Dr. Weiner's examinations of Arias had normal findings except for tenderness in the right upper extremity and cervical spine.  (R. 346.)

On October 8, 2013, Arias again injured her right shoulder rescuing a child from a pond.  (R. 43, 1993-96.)  Arias did not immediately stop work because of the injury and

returned to work the next day.  (R. 1996.)  On October 22, 2013, however, she saw Dr. Orsuville Cabatu who identified a cervical strain and shoulder strain and, for workers' compensation purposes, advised that Arias was disabled from duty and unable to return to work.  (R. 1780.)

On April 3, 2014, Arias had an MRI which revealed a tear and a suspected tear in her right shoulder.  (R. 224.)  On May 2, 2014, Arias had an electromyography ("EMG") test which revealed right C6 radiculopathy and right carpal tunnel syndrome.  (R. 1330.) On May 27, 2014 – three days after filing her disability application – Arias had arthroscopic surgery to repair the right shoulder tear.  (R. 225-226.)

In June 2014, the Division of Disability Determination referred Arias to Dr. Marisela Gomez for orthopedic examination.  (R. 264.)  Dr. Gomez diagnosed neck pain with radiation, right shoulder pain with radiation, back pain, and depression.  (R. 266).  Dr. Gomez observed that Arias's gait was normal, that she was able to rise from a chair without difficulty, needed no help changing for the exam or getting on and off the exam table, and that her hand and finger dexterity were intact.  (R. 265.)  Dr. Gomez opined that Arias had moderate to severe limitations for lifting and carrying heavy objects due to recent shoulder surgery, and mild to moderate limitations for walking and standing for long periods, as well as for squatting, pushing, and pulling.  (R. 267.)

In July 2014, Arias's primary care physician Dr. Weiner assessed that Arias had moderate depression and anxiety.  (R. 338-39.)  That same month, Arias returned to Dr. Cabatu complaining of pain radiating from the neck to the right hand, and he advised that Arias was disabled from returning to work due to pain.  (R. 231.)  On August 8, 2014, Dr. Cabatu again assessed that Arias was unable to return to work due to right shoulder pain.

(R. 296.)  Dr. Cabatu noted that Arias was post right shoulder arthroscopy, had right C6 radiculopathy, right mild carpal tunnel syndrome, right shoulder rotator cuff tear, disc bulge C5-6, cervical right shoulder strain/sprain with exacerbation, and left shoulder consequential injury.  (R. 296.)

In November 2014, orthopedic surgeon Dr. Howard Katz examined Arias for a workers' compensation insurance carrier and diagnosed a cervical spine sprain/strain and assessed a moderate partial disability of 50%.  (R. 1393.)  Dr. Katz concluded that Arias could return to work and perform sedentary duties with no repetitive overhead activities and no pushing, pulling, or lifting more than fifteen pounds.  (R. 1393.)

On March 7, 2015, an MRI of Arias's right wrist revealed an abnormality of the capitate bone (the largest carpal bone) and a peripheral tear of the triangular fibrocartilage with an associated joint effusion, but no evidence of fracture.  (R. 1366.)  An MRI of her right elbow on the same day revealed joint effusion and a partial tear of the anterior bundle of the medial collateral ligament.  (R. 1367).

On September 2, 2015, Arias went to Dr. Miguel Coba with complaints of back, neck, and right shoulder pain.  (R. 1144).  A cervical spine MRI revealed a broad posterior disc bulge at C5-6, and EMG testing revealed bilateral C6 radiculopathy and mild carpal tunnel syndrome.  (R. 1144.)  Dr. Coba administered a cervical epidural steroid injection and prescribed Voltaren gel.  (R. 1144.)  On September 15, 2015, Dr. Charles Totero, an orthopedic surgeon, examined Arias for a workers' compensation insurance carrier and reported that despite needing physical therapy for her left shoulder, Arias was capable of working as long as she did not lift, push, or pull more than twenty pounds.  (R. 1138.)

On September 29, 2015, Dr. Douglas Greenfield examined Arias for the Division of Disability Determination.  (R. 993.)  Arias reported pain in the neck and upper thoracic spine.  (R. 993.)  Dr. Greenfield observed that she was in no acute distress and her gait and station were normal.  (R. 994.)  Her hand and finger dexterity were intact on the left and her grip strength on the left was reported a 5/5, while her grip strength on the right was reported 4/5.  (R. 996.)  On the basis of examination, Dr. Greenfield opined that Arias had a moderate limitation in her ability to lift and carry utilizing the right arm, a mild limitation in activities requiring fine manipulation and dexterity of the right hand related to possible carpal tunnel syndrome, and a moderate limitation in ability to bend, sit, stand, and walk due to low back pain.  (R. 996.)  Dr. Greenfield also noted that Arias had the ability to shop, travel, prepare simple meals, care for her own personal hygiene, and sort and handle paper files.  (R. 1003.)

On September 30, 2015, Dr. Allen Meisel conducted an orthopedic and neurologic examination of Arias for the Division of Disability Determination.  (R. 1007, 1011.)  Arias complained of right shoulder pain, cervical and lumbar back pain, carpal tunnel syndrome, and depression.  (R. 1007.)  Dr. Meisel found that her gait as well as her hand and finger dexterity were normal but diagnosed right shoulder pain secondary to rotator cuff injury, cervical and lumbar back pain, carpal tunnel syndrome, and depression.  (R. 1008-09).  Dr. Meisel opined that Arias had mild limitations lifting, carrying, and handling objects, but opined that Arias could never lift or carry anything, and could sit, stand, and walk for only thirty minutes in total.  (R. 1015-19.)  He also found that she could travel, prepare simple meals, care for her own personal hygiene, and sort and handle paper files.  (R. 1020.)

A November 14, 2015 MRI of Arias's left shoulder revealed an anterior superior labral tear as well as an inferior labral tear and a partial tear of the subscapularis tendon. (R. 2468.)  On December 22, 2015, Dr. David Capiola performed arthroscopic surgery to repair tears in her left shoulder, extensive debridement, and soft tissue decompression. (R. 2469.)   Dr. Weiner's treatment records show that Arias recovered well after the surgery and received some pain management in the following months.  (R. 2441-2453.)

On May 9, 2016, Arias returned to Dr. Weiner with complaints of headaches and vertigo.  (R. 2420-21.)  On August 15, 2016, Arias again returned to Dr. Weiner, this time stating she felt well except for continued pain in shoulders when lifting.  (R. 2424.)  Dr. Weiner assessed that Arias could stand, sit, and walk for less than four hours in a day, and could only lift or carry less than five pounds.  (R. 2422-23.)

Dr. Weiner's progress notes indicate Arias had a normal annual physical examination in April 2018, with the only physical complaint being constipation.  (R. 2904-07.) Arias's  annual physical with Dr. Weiner in September 2019 was also normal, except for subjective reports of pain with certain head movements and abduction of the humeri, as well as clinical findings of tenderness in the cervical spine.  (R. 2955.)

On February 12, 2019, Dr. Ann Finegan conducted an orthopedic examination of Arias for the Division of Disability Determination.  (R. 2766.)  She stated that Arias was in no acute distress but became tearful at different points in the examination.  (R. 2768.) She diagnosed a mood disorder, right shoulder impingement syndrome, and status post right carpal tunnel release with residual medial nerve sensory abnormality.  (R. 2769.) She also stated that Arias should not perform any work tasks above desk height using the right arm, should not lift, push, pull, or carry more than about two pounds using the

right hand, should not perform tasks which would necessitate identification of objects by touch using the right hand, or use the right hand for controls.  (R. 2769.)

Dr. Weiner's September 16, 2019 functional assessment stated that Arias was still as functionally limited as he had indicated in August 2016.  The assessment indicated that Arias still could not sit, stand, or walk for more than four hours per day, but that she could now reach overhead occasionally.  (R. 2779-80.)

On September 21, 2019, Dr. Aurora Tompar Tiu completed a psychiatric report stating that Arias was markedly limited in her ability to understand, remember, and carry out simple instructions, and in her ability to make judgments in complex work-related decisions.  (R. 3003).  Dr. Tiu also stated that Arias had marked limitations in interacting appropriately with coworkers, supervisors, and the public, and in responding appropriately to usual work situations and changes in routine.  (R. 3004.)

## C.   Additional Opinion Evidence

In addition to the medical source opinions reflected in the medical history set forth above, the record also includes the testimony of Dr. Kendrick at the second hearing, and two medical source statements from consultative psychiatric examiners regarding Arias's mental health.

### 1.   Dr. Kendrick

At the 2019 hearing, Dr. Kendrick, an orthopedic surgeon, reviewed the complete medical record but did not examine Arias.  Dr. Kendrick testified that Arias's shoulder impairments from previous surgeries limited Arias's ability to reach overhead, but not to the point of precluding Arias from working.  Dr. Kendrick concluded that Arias had the ability to sit, stand, and walk for six hours each, was limited to lifting and carrying up to

ten pounds occasionally and less than ten pounds frequently, could occasionally climb ramps or stairs, balance, stoop, kneel, crouch, crawl, and reach overhead with bilateral arms, frequently reach in other directions, did not have any limitations in handling or fingering, and should avoid hazardous machinery and vibrating tools.  (R. 2538-49.)

### 2.     The Psychiatric Opinions

On June 26, 2014, Dr. David Mahony conducted a psychiatric evaluation of Arias. He found that she was cooperative, fluent, and clear.  (R. 260.)  He found no evidence of limitation in her ability to follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, and maintain a regular schedule.   He opined that she may have mild difficulties learning new tasks and performing complex tasks independently, and that she had mild difficulty making appropriate decisions, relating to others, and dealing with stress due to psychiatric symptoms.  (R. 261.)  He also stated that while the results of his evaluation appeared consistent with psychiatric symptoms, they do not interfere with her ability to function on a daily basis.  (R. 261.)  Dr. Mahony's report also contained Arias's statement that she stopped working due to problems with her right shoulder.  (R. 261.)

More than a year later, on September 29, 2015, Dr. Amory Carr conducted a psychiatric evaluation.  (R. 989.)  Arias reported difficulty falling asleep, loss of appetite, and some symptoms of depression.  (R. 989.)  She also reported difficulty dressing and grooming herself, performing household chores due to physical problems, and shopping or taking public transportation due to intense anxiety.  (R. 991.)  Dr. Carr observed that Arias was cooperative and her thought process was coherent and goal directed.  (R. 990.) Dr. Carr found that Arias was able to follow and understand simple directions and

instructions with moderate limitation, maintain attention and concentration with mild limitation, was able to maintain a regular schedule with moderate limitation, learn new tasks with moderate limitation, make appropriate decisions with moderate limitation, and appropriately deal with stress with moderate to marked limitation.  (R. 991.)

### D.    Vocational Expert Testimony

At the 2016 hearing, the ALJ asked the VE, Edna Clark, to consider whether there were any jobs in the national economy that an individual of Arias's age, educational level, prior work history, and residual functional capacity could perform.  (R. 66).  The VE testified that such an individual could perform the jobs of final assembler at the light or sedentary level or the job of hand trimmer.  (R. 66-67.)  The ALJ then asked that whether such an individual would be able to do any of those jobs if she was limited only to occasional handling and fingering with the dominant right hand.  (R. 67.)  The VE testified that she could not and that there were no jobs in the national market that she would be able to do with such limitations.  (R. 67-68.)  The VE also stated that Arias would not be able to perform the jobs if she were to be absent in excess of one day per month or if she could not tolerate simple stress.  (R. 68.)  When given the opportunity to question the VE, Arias's attorney stated that the ALJ's hypotheticals encompassed what he would have wanted to address.  (R. 68.)

At the 2019 hearing, the ALJ asked the VE, Melissa Fass-Karlin, to consider whether there were any jobs in the national economy that an individual of Arias's age, educational level, prior work history, and residual functional capacity could perform.  (R. 2568.)  The VE testified that such an individual could perform the sedentary, unskilled jobs of document preparer, cutter/paster, and table worker.  (R. 2568.)  While all three

jobs require frequent reaching, the VE pointed out that the Dictionary of Occupational Titles ("DOT") does not distinguish between reaching overhead and in other directions, and that in her experience, the jobs she listed did not involve more than occasional overhead reaching.  (R. 2568-69.)  When given the opportunity to question the VE, Arias's attorney asked whether, using Dr. Weiner's restrictions, an individual who could not lift more than five pounds occasionally and three pounds frequently, would be able to perform these jobs.  (R. 2570.)  The VE stated than an individual with such limitations would not be able to perform these jobs.  (R. 2570.)

**E.    The ALJ's Decision**

ALJ Solomon issued his second decision on January 2, 2020, employing the requisite five-step analysis.  (R. 2478-2503.)  As with his 2017 decision, the ALJ determined that Arias was "not disabled."  (R. 31, 2503.)  The ALJ found that Arias meets the insured status requirements of the social security act through December 31, 2018 and that she had not been engaged in substantial gainful activity since the alleged onset date of October 12, 2013.  (R. 2486.)  He found that Arias had four severe impairments – degenerative disc disease, bilateral shoulder tears, status post right shoulder surgery in May 2014 and left shoulder surgery in December 2015, and major depressive disorder.  (R. 2487.)  At the same time, the ALJ found that none of those impairments, alone or in combination, met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. 2488-89.)

Based on the entirety of the record, the ALJ determined Arias had the RFC to perform light work, and that in an eight hour work day, she could sit for six hours, stand/walk for six hours, occasionally lift/carry up to ten pounds, frequently lift/carry less

than ten pounds, occasionally climb, kneel, stoop, crouch, and crawl, occasionally reach overhead and frequently reach in all other directions, frequently handle and finger, needed to avoid working at unprotected heights or with hazardous machinery, and could perform the full range of repetitive rote work but required a job not working with crowds. (R. 2489-90.)

The ALJ determined that Arias was unable to perform any past relevant work, but considering her RFC, she could perform the jobs, as identified by the VE, of document preparer, cutter/paster, and table worker.  (R. 2501-03).  The ALJ determined that the RFC is supported by the medical records, medical opinions, treatment history, and Arias's statements and activities.  (R. 2501.)

During the course of his analysis, the ALJ determined that Arias's medically determinable impairments could reasonably be expected to cause the symptoms she alleged; however, Arias's statements concerning the intensity, persistence, and limiting effects of the symptoms were "not entirely consistent" with the medical evidence and other evidence in the record.  (R. 2496.)

In reaching his decision, ALJ Solomon assessed each of the medical opinions.  He stated, correctly, that the regulations applicable to Arias's claim accord deference to the opinions of treating physicians, "but only if the opinions are well supported and there is no substantial inconsistent evidence in the record."  (R. 2498.)  He concluded that neither Dr. Weiner's nor Dr Tiu's opinions met that standard.  (R. 2498.)  ALJ Solomon gave substantial weight to Dr. Weiner's opinions indicating that Arias had no limitations for handling, fingering, and feeling, and could frequently reach forward and occasionally reach overhead, but found that Dr. Weiner's progress and treatment notes do not support

the limitations he provided for sitting, standing, walking, lifting or carrying.  The ALJ thus gave little weight to those aspects of Dr. Weiner's opinions.  (R. 2498.)  Similarly, the ALJ found that Dr. Tiu's assessments grossly exaggerated Arias's mental limitations and therefore should be assigned no more than limited weight.  (R. 2499.)

The ALJ assigned substantial weight to Dr. Kendrick's expert testimony regarding limitations associated with Arias's physical impairments.  (R. 2498.)  He found Dr. Kendrick's opinion consistent with Dr. Weiner's treatment records and supported by medical evidence of record.  (R. 2498.)  The ALJ assigned no weight to Dr. Meisel's opinion because it was completely unsupported by any physical findings.  (R. 2500.)  He assigned partial weight to Dr. Totero's opinion because it was based on a one-time examination.  (R. 2500.)  He also gave partial weight to the opinions of physicians, like Dr. Cabatu, who examined Arias for workers' compensation purposes, to the extent that the opinion described Arias as disabled from her past job, but otherwise afforded those opinions little to no weight.  (R. 2500.)  The ALJ gave most of the opinion of Dr. Gomez limited weight, as her physical findings did not support her conclusions and were vague and nonspecific.  (R. 2499.)  He also gave little weight to Dr. Katz's opinion because there was no medical evidence supporting his conclusions limiting Arias's sitting, standing, and walking at sedentary levels, and also because the evidence indicated greater limitations for lifting and carrying than Dr. Katz had assessed.  (R. 2499.)

The ALJ also gave little weight to Dr. Greenfield's opinion that Arias had no use of her right hand because it was contradicted by Dr. Greenfield's own examination, which showed only mildly reduced hand dexterity and his narrative report which indicated only mild right hand limitations.   The ALJ also found that Dr. Greenfield's assessment of

limitations for standing and walking was not associated with a medically determinable back impairment and was contradicted by Dr. Greenfield's own examination and other treatment records.  (R. 2500.)   The ALJ credited Dr. Finnegan's opinions of Arias's ability to sit, stand, and walk at the light level of exertion because they were supported by relevant evidence, but gave Dr. Finnegan's opinion only partial weight as it was based on an examination performed after the date last insured and contained some inconsistencies.  (R. 2500.)

The ALJ gave Dr. Mahoney's June 2014 opinion substantial weight that Arias had at most mild mental limitations.  The ALJ reasoned the opinion was supported by the essentially normal mental status examination findings in Dr. Mahoney's report and by Arias's self-described ability to perform a wide range of activities at the time.  (R. 2500-01.)  The ALJ gave Dr. Carr's opinion little weight, as it was based upon a one-time examination and there were some contradictions with Dr. Carr's clinical findings and later psychiatric treatment records.  (R. 2501).

## DISCUSSION

Arias contends that the ALJ's decision should be remanded because the ALJ failed to follow the treating physician rule and failed to resolve a conflict in the vocational expert testimony.  In response, the Commissioner argues that substantial evidence corroborates the ALJ's finding of an RFC allowing Arias to perform less than a full range of light work that is available in significant numbers in the national economy.  The Court agrees with the Commissioner.

**A.     The ALJ Did Not Err In Assigning Weights To The Medical Opinion Evidence**

Arias argues the ALJ violated the treating physician rule by not giving controlling weight to Dr. Weiner's opinion that Arias lacked the capacity for sedentary work.[6]  (Pl. Mem. 15-17.[7])  The ALJ did not err.  The ALJ provided good reason for giving Dr. Weiner's opinion substantial weight where supported by the record, and giving little weight where not well-supported by or inconsistent with the record.

The applicable regulations entitle a treating source's opinion to controlling weight only if the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in a claimant's case record.  20 C.F.R. § 404.1527(c)(2).  "Although the treating physician rule generally requires deference to the medical opinion of a claimant's treating physician … the opinion of the treating physician is not afforded controlling weight where … the treating physician issued opinions that are not consistent with other substantial evidence in the record."  *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004).

The ALJ adhered to the regulations in assessing Dr. Weiner's opinion and the other medical source opinions of record.  In contending otherwise, Arias glosses over the fact that the ALJ gave several of Dr. Weiner's opinions substantial weight; namely, those indicating that Arias had no limitations for handling, fingering, and feeling, and could frequently reach forward but only occasionally reach overhead.  (R. 2498.)  The ALJ's

---

[6] Arias does not assert or develop any argument concerning the ALJ's assessment of the medical opinions concerning Arias's mental impairments.  Instead, Arias's moving brief focuses solely on Arias's physical abilities.  The Court therefore does not further address the ALJ's findings regarding Arias's mental abilities.

[7] "Pl. Mem." refers to Plaintiff's Memorandum Of Law In Support Of Plaintiff's Motion For Judgment On The Pleadings at Dkt. 20.

RFC formulation is fully consistent with those opinions.  Moreover, the ALJ did not assign a greater weight to any other medical source opinion with respect to those functions.

The issue then becomes the opinions of Dr. Weiner that the ALJ did not credit, specifically those related to sitting, standing, walking, lifting, and carrying.  The ALJ concluded that Arias had the ability to sit for a total of six hours in a workday, stand or walk for a total of 6 hours, and could frequently lift or carry less than 10 pounds.[8]  (R. 2489-90.)  In contrast, Dr. Weiner opined in both 2016 and 2019 that Arias could only sit for a total of four hours in a workday, stand or walk for a total of four hours in a workday, and could not lift or carry more than five pounds.  (R. 2422, 2779.)

The ALJ gave good reasons for not crediting those portions of Dr. Weiner's opinion.[9]  After an intensive review of the medical record, the ALJ concluded that "neither Dr. Weiner's progress notes nor any other treating or examining notes indicate clinical or diagnostic findings supporting the limitations Dr. Weiner provided for sitting, standing, and

---

[8] The RFC articulated by the ALJ twice referenced the ability to lift/carry 10 pounds. Specifically, the ALJ found that Arias had the ability to "occasionally lift/carry up to 10 pounds, and frequently lift/carry less than 10 pounds."  (R. 2489-90.)  Neither party has raised any issue as to whether that formulation is internally inconsistent.  Regardless, for present purposes, the Court takes into account both references.

[9] There is nothing improper about the ALJ having accorded some of Dr. Weiner's opinions substantial weight while not giving the same weight to other of his opinions.  An ALJ "is not required to take the opinion of an opining physician wholesale and can rely on parts of it, as long as the RFC is supported by substantial evidence."  *Gutierrez v. Commissioner of Social Security*, No. 20-CV-10233, 2022 WL 2116718, at *12 (S.D.N.Y. June 13, 2022); *see also Pappas v. Saul*, 414 F. Supp.3d 657, 674 (S.D.N.Y. 2019) ("[g]iving different weight to different parts of a medical opinion is generally acceptable") (quoting *Brush v. Berryhill*, 294 F. Supp. 3d 241, 262 (S.D.N.Y. 2018)).

walking." (R. 2498.) Similarly, with respect to the ability to lift and carry, the ALJ found that while "evidence supports a finding that the claimant had limited ability to lift/carry, particularly during the periods before and after surgery, … the weight of the evidence, including the limited positive findings in Dr. Weiner's progress notes, do not support Dr. Weiner's restriction to lifting/carrying less than five pounds." (R. 2498.) The ALJ thus found Dr. Weiner's opinion lacking support by the clinical and diagnostic assessments of record – a proper basis for not assigning a treating physician's opinion controlling weight. *See Seymour v. Saul*, No. 19-CV-2466, 2021 WL 3168626, at *3 (S.D.N.Y. July 27, 2021) (holding the ALJ properly weighed and discounted plaintiff's treating physician's opinion because it was inconsistent with the other evidence in the record); *Ramos v. Commissioner of Social Security*, No. 13-CV-6561, 2015 WL 708546, at *16 (S.D.N.Y. Feb. 4, 2015) (holding the ALJ committed no error in according the opinion of plaintiff's treating physician little weight because it was contradicted by contemporaneous medical evidence). Indeed, the ALJ found that Dr. Weiner's own treatment and progress notes contradicted the restrictive portions of Dr. Weiner's opinions. As the ALJ explained, "[t]he limitations in Dr. Weiner's September 2019 report (like the [2016 report]) are contradicted by Dr. Weiner's own contemporaneous treatment notes, which consistently show normal findings except for subjective reports of cervical tenderness and pain with head movements and with abduction of the humeri." (R. 2494.)

There is substantial evidence supporting that conclusion. Dr. Weiner's progress notes over time mostly indicate Arias had normal annual physicals with no record of difficulty walking, standing, or sitting. On July 14, 2014, Arias had both an annual physical and an "acute visit" with Dr. Weiner during which she complained of left lateral hip and

leg pains but had an otherwise normal examination.  (R. 273, 277, 280.)  On May 26, 2015, Arias was evaluated for left shoulder and back pain.  While it was noted that she was restricted in the area of bending and rotating, the report does not indicate any limited ability to sit, stand, or walk.  (R. 317-22.)  Dr. Weiner's May 2016 progress notes indicated that Arias's only complaint at that time was neck stiffness with mild posterior head pain, and positional vertigo.  (R. 2429.)

In April 2018, Dr. Weiner's progress notes indicate Arias had a normal annual physical examination, with the only physical complaint being constipation.  (R. 2904-07.) Arias's annual physical with Dr. Weiner in September 2019 was also normal, except for the subjective reports of pain with certain head movements and abduction of the humeri, as well as clinical findings of tenderness in the cervical spine.  (R. 2955.)  Addressing the period since Dr. Weiner's first opinion in 2016, the ALJ observed that Dr. Weiner's 2017-2019 progress notes "are notable for the absence of significant clinical or diagnostic findings.  Indeed, these treatment records show little treatment for musculoskeletal impairments and medical visits mainly to address migraines."  (R. 2493.)

The ALJ also properly evaluated the other medical opinion evidence of record and did so consistently with his evaluation of Dr. Weiner's opinions.  He assigned weight to opinions, either in part or in whole, based on the extent to which they were or were not supported by the medical record and the medical source's own findings and other relevant factors.  For instance, the ALJ afforded substantial weight to the opinions of Dr. Kendrick (who testified that Arias had the ability to sit for six hours and stand or walk for six hours each day and was limited to lifting or carrying up to 10 pounds (R. 2491)), because, even though Dr. Kendrick did not treat or examine Arias, he reviewed the complete medical

record and supported his opinions with citations to the medical evidence.  (R. 2498.)  The ALJ also found Dr. Kendrick's opinion consistent with Dr. Weiner's treatment records.  (R. 2498.)

As with Dr. Weiner, the ALJ assigned substantial weight to portions of Dr. Gomez's opinions that were supported by the medical record (such as limited use of right shoulder) but assigned only limited weight to portions that were vague, contradicted by normal examination findings, and unsupported by clinical findings (such as limitations on standing or walking).  (R. 2499.)  Similarly, the ALJ assigned only limited weight to the opinions of Dr. Katz, because, as with Dr. Weiner and Dr. Gomez, there was no medical evidence supporting the extent of limitation assessed for sitting, standing, and walking.  (R. 2499.)  At the same time, the ALJ assigned only limited weight to Dr. Katz's opinion that Arias could lift up to 15 pounds, finding that opinion insufficiently limited.  (R. 2499.)  Likewise, the ALJ gave little weight to the opinion of Dr. Greenfield (an internist, not orthopedist) as being contradicted by Dr. Greenfield's own examination and findings.  (R. 2500.)  And the ALJ reasonably afforded no weight to Dr. Meisel's opinion because it was internally inconsistent (by indicating in one place that Arias had only mild limitations for lifting/carrying but indicating in another place that Arias could never lift or carry anything) and unsupported by any medical evidence.  (R. 2500.)

In arguing that the ALJ should have given the entirety of Dr. Weiner's opinion controlling weight, Arias cites to certain diagnostic results and asserts that the treating physician's opinion need not be supported by all evidence in the record but instead needs only some reasonable support.  (Pl. Mem. 16-17 (citing SSR 96-2p, 61 Fed. Reg. 34490-92 (July 2, 1996).)  The Court agrees with the asserted legal principle, but not the

conclusion.  As recounted above, the ALJ rejected those portions of Dr. Weiner's opinion that lacked sufficient support and were contradicted by other aspects of the record, including Dr. Weiner's own treatment notes.  Even the authority Arias relies on recognizes that a treating physician opinion need not be given controlling weight where, as here, there is substantial evidence that contradicts or conflicts with the opinion.  *Id.*

The only objective diagnostic results that Arias points to in support of Dr. Weiner's opinion are x-rays from 2013 and 2014, and an MRI and  EMG test from 2014, showing that Arias had cervical radiculopathy.  (Pl. Mem. at 16-17.)  The ALJ, however, expressly addressed that evidence.  As the ALJ explained, Arias "had degenerative disease of the cervical spine, but with no evidence of disc herniation or root involvement, although an EMG did show evidence of radiculopathy, which was treated with medication and three injections administered between October 2014 and March 2015."  (R. 2497.)  Recognizing the limited consequences of the cervical spine impairment, the ALJ noted that "[t]he only residual complaint in the medical record is tenderness in the neck, and pain with certain head motions, requiring no treatment other than medication.  As discussed, there is no clinical or diagnostic evidence establishing an impairment of the back, or objective findings supporting limitations for sitting, standing, or walking."  (R. 2497.)

Finally, Arias points to aspects of the other medical source opinions that Arias contends support Weiner's opinions, including those of Drs. Gomez, Katz, Greenfield, Meisel, and Kendrick.  (Pl. Mem. at 17-18.)  But as set forth above, the ALJ properly evaluated and assigned varied weights to those opinions.  At bottom, Arias asks this Court to reweigh the evidence.  Because there is substantial evidence supporting the ALJ's decision, however, the Court may not do so.  *See, e.g., Krull v. Colvin*, 669 F. App'x 31,

32 (2d. Cir. 2016) ("Krull's disagreement is with the ALJ's weighing of the evidence, but the deferential standard of review prevents us from reweighing it").

**B.     There Is No Conflict Between The ALJ'S RFC And The VE's Testimony**

Arias argues that the ALJ erred in relying on the VE's testimony by failing to inquire into a conflict between the VE's testimony and the officially reported requirements of the jobs identified by the VE.  That argument does not survive scrutiny.

The ALJ asked the VE to consider what jobs could be performed by an individual who could sit for six hours, stand or walk for a total of six hours, occasionally lift or carry up to ten pounds and frequently lift or carry less than ten pounds.  (R. 2567; *see also* R. 2489-90 (ALJ's RFC finding).)  The VE testified that such an individual could perform the unskilled, light or sedentary jobs of document preparer, cutter-and-paster, and table worker.  (R. 2568.)

Arias asserts that the jobs identified by the VE cannot be performed by someone with the limitations imposed by the ALJ.  Specifically, Arias argues, the ALJ restricted Arias to "occasionally reaching overhead," yet the Selected Characteristics of Occupations ("SCO") provides that all three jobs require "frequent" overhead reaching. Arias relies on *Lockwood v. Commissioner of Social Security*, 914 F. 3d 87, 92 (2d Cir. 2019), which, she submits, held that "ALJs have a duty to identify and inquire into all 'apparent' conflicts – even if 'non obvious' – between a vocational expert's testimony," the SCO, and the Dictionary of Occupational Titles (the "Dictionary" or "DOT").  (Pl. Mem. at 20.)  But *Lockwood* is clearly distinguishable from this case because the ALJ did what *Lockwood* requires.

In *Lockwood*, the Court held that the ALJ's finding that the plaintiff was capable of performing the three jobs identified by the VE was not based on substantial evidence

because the ALJ "failed to examine an apparent conflict between [the VE's] testimony

and the Dictionary." *Id*. at 91.  The Court stated "[a]s the Fourth Circuit has persuasively

explained, [Social Security Ruling ("SSR") 00-4p] mandates that whenever the

Commissioner intends to rely on a vocational expert's testimony, she must identify and

inquire into all those areas where the expert's testimony **seems to** conflict with the

**Dictionary**."[10]   *Id*. at 92 (citing *Pearson v. Colvin*, 810 F.3d 204, 209 (4th Cir. 2015)

(internal quotation marks and alterations omitted) (emphasis in original).

In the instant case, the ALJ did exactly that.  The ALJ questioned the VE about the

reaching requirements of the three jobs identified, explicitly inquiring about whether they

required frequent reaching or only occasional overhead reaching:

> ALJ:  Now, the jobs you described, the DOT requires
> frequent reaching for those jobs; is that correct?
>
> VE:  Yes.
>
> ALJ:  Okay. The DOT does not distinguish between
> overhead reaching and reaching in all other directions;
> is that correct?
>
> VE:  Yes.
>
> ALJ:  Okay.
>
> VE:  My answers are based on my work experience since
> 1986.
>
> ALJ:  That those particular jobs do not require any more than
> occasional overhead reaching; is that correct?

---

[10] "Social Security Rulings 'represent precedent final opinions and orders and statements of policy and interpretations' adopted by the Commissioner, and 'are binding on all components of the Social Security Administration.'" *Marcano v. Berryhill*, No. 17-CV-4442, 2018 WL 5619749, at *12 n. 20 (S.D.N.Y. July 13, 2018) (quoting 20 C.F.R. § 402.35); *see also Henry v. Colvin*, No. 12-CV-6822, 2015 WL 9238959, at *12 n. 10 (S.D.N.Y. Dec. 17, 2015).

VE:     Yes, Your Honor.

(R. 2568-69.)  In his decision, the ALJ expressly addressed the conflict and the VE's resolution of it:

> The vocational expert explained that although these jobs require frequent reaching, the Dictionary of Occupational Titles does not distinguish between overhead reaching and reaching in all directions, and based upon her experience, training, and observations, these jobs are performed at a table and do not require more than occasional overhead reaching.

(R. 2503.)  The ALJ thus made an appropriate inquiry and "obtain[ed] a reasonable explanation" as to the apparent reaching conflict by probing the VE.  *Lockwood,* 914 F.3d at 92.

Arias argues that the VE's explanation of the conflict was not sufficient because her testimony was "nothing more than speculation" and "cannot cross the threshold of a reasonable explanation to overcome the presumption for frequent reaching established by the SCO." (Pl. Mem. at 22.)  In particular, Arias takes issue with the fact that the VE did not personally "observe[] the[] jobs."[11]  (*Id.*)

At the hearing, however, the VE testified that while she had not observed anyone "recently" doing the jobs, her testimony was based on her work experience dating back to 1986.  (R. 2568-69.)  Arias has not provided any support for why the VE's general

---

[11] Arias also assails the ALJ as having "falsely" claimed that the VE "reconciled the conflict between the SCO description of [the] job as requiring reaching in any direction because it was based on [the VE]'s observations."  (Pl. Mem. at 22.)  That characterization is not correct.  Whereas the ALJ described the VE as having purported to base her opinion on "her experience, training, and observations," the ALJ expressly relied only on the VE's "professional knowledge and experience."  (R. 2503.)

experience, even in the absence of direct observation of the jobs in the field, does not constitute a reasonable explanation.

To the contrary, SSR-004p expressly states under "Resolving Conflicts in Occupational Information" that "information about a particular job's requirements" may be obtained through a VE's experience in job placement.  SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000).  The policy interpretation says nothing about a VE needing to have visited a workplace to resolve a conflict.  Arias offers a single inapt case for the proposition that VE "evidence cannot be substantial if it is 'conjured out of whole cloth.'"  (Pl. Mem. at 23; *see Brault v. Social Security Administration*, 683 F. 3d 443, 450 (2d Cir. 2012).)  Over three decades of work experience is a far cry from mere conjecture, and the VE's resume represents that she has extensive experience in job placement.  (*See* R. 2763-64.)

In short, the ALJ properly inquired and resolved the apparent conflict in the VE's testimony, SCO, and DOT.  Having done so, the ALJ did not err.

## C.    Substantial Evidence Supports The ALJ's Finding That Arias Is Not Disabled

Lastly, Arias summarily argues that she has introduced evidence showing that she lacks the RFC for sedentary work and that the ALJ erred by ignoring that evidence.  Arias does not, however, develop that argument beyond the arguments addressed above. Contrary to Arias's contention, the ALJ did not selectively pick and choose evidence but rather carefully evaluated the varied medical opinion evidence and provided good reasons for the different weights he gave to those opinions, whether in whole or in part. (R. 2498-2501.)   Encapsulating his thorough review and assessment of the record, the ALJ explained, "a close review of the extensive medical record (which spans more than five years and includes numerous examinations performed for the claimant's Workers' Compensation claim) reveals that the claimant's most significant impairments became

problematic at different times, were treated effectively, and did not preclude her from performing work."  (R. 2496.)

It is not enough for a claimant such as Arias to point to evidence in the record supporting their alleged disability where, as here, the ALJ's decision is supported by substantial evidence.  *See Genier*, 606 F.3d at 49 (a court must uphold an ALJ's decision supported by substantial evidence, even if there is also substantial evidence for the claimant's position).  Having conducted a full review of the record, the Court concludes that the ALJ's determination is supported by substantial evidence and therefore may not be remanded.

## CONCLUSION

For the reasons stated above, pursuant to sentence four of 42 U.S.C. § 405(g), Arias's motion is DENIED and the Commissioner's motion is GRANTED.

SO ORDERED.

_____
ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE

Dated: August 24, 2022.
      New York, New York

Copies transmitted on this date to all counsel of record.